**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| LEMONT LOVE, | : | |
| | : | Civil Action No. 15-4404 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (ECF No. 30).   Plaintiff, Lemont Love, filed a brief in opposition (ECF No. 31).   Defendants did not file a reply brief.   For the following reasons, this Court will grant the motion in part and deny the motion in part.

## I.  BACKGROUND

In his original complaint and in the opening pages of his amended complaint, Plaintiff asserts several claims against certain officers at Northern State Prison arising out Plaintiff's visiting the prison canteen.   In his amended complaint, Plaintiff asserts that, on November 1, 2014, Plaintiff purchased several items from the prison canteen.   (ECF No. 20 at 10-11).   While at the canteen, Plaintiff helped another prisoner carry several items until canteen employees gave the other prisoner a bag, at which point Plaintiff gave him back his things and the other prisoner left.   (*Id.*).   After the other inmate had departed, Plaintiff, however, apparently had inadvertently

failed to return to him a jar of hair grease which had become mixed up with Plaintiff's purchases. (*Id.*).   Plaintiff alleges that, while leaving the canteen, C.O. Marsh stopped him to check his purchases against his receipt from the canteen and discovered Plaintiff had not purchased the hair grease.   (*Id.*).   Marsh instructed Plaintiff to throw it away, but Plaintiff refused and requested to speak to a sergeant.   (*Id.*).   Plaintiff was then instructed to follow Marsh into another room, at which point Marsh allegedly began to threaten and berate Plaintiff verbally.   (*Id.*).   A second officer, C.O. Wasik, was also in the room at the time, and also apparently yelled at and insulted Plaintiff.   (*Id.*).   Plaintiff again requested to speak with a sergeant, but the officers refused and threatened to give him something about which to complain if he did not cease.   (*Id.*).

Plaintiff was then led into another room and told to sit down.   (*Id.*).   Wasik, Marsh, and a third corrections officer named Doyle then all again began to verbally berate Plaintiff until Wasik departed to retrieve the other inmate who had purchased the grease.   (*Id.*).   When Wasik and the other inmate returned, both Plaintiff and the other inmate were given disciplinary charges.[1]   (*Id.*).   Officer Wasik then filled out a confiscation form and instructed Plaintiff to sign it, which Plaintiff refused to do without first reading the form.   (*Id.*).   Wasik apparently then became impatient, threatened to call for assistance, and "snatched the paper out of Plaintiff's hand."   (*Id.* at 10).   The paper allegedly cut Plaintiff's hand in the process.   (*Id.*).   The officer then wrote upon the sheet that Plaintiff had refused to sign the form.   (*Id.*).   Plaintiff alleges that he then told the officers he would file a lawsuit against them.   (*Id.*).   Officer Doyle then threatened to "tear Plaintiff's cell up every day" if Plaintiff filed a complaint.   (*Id.*).   The officers then seized Plaintiff's canteen

---

[1] In his complaint Plaintiff states that he and the other inmate were given "blue sheets."   (*Id.* at 10).   Plaintiff clarifies in his response to the motion to dismiss that these blue sheets were the disciplinary charges, which were ultimately dismissed.

receipt without providing a confiscation sheet.  (*Id.*).  Plaintiff alleges that he was thereafter "forced to stand outside in the freezing rain without a coat for no reason for an extended period of time (20-30 min[utes])."  (*Id.*).

Upon returning to his unit, Plaintiff filed a report and a request to go to the medical unit. (*Id.*).  Plaintiff was thereafter given an antibiotic ointment to treat the paper cut to his hand while at the medical unit on November 4, 2014.  (*Id.*).  Plaintiff also alleges that, while returning to his unit, another corrections officer named Islam stopped him and apologized for the behavior of the other officers.  (*Id.* at 12).

As to Defendants Lanigan and Nelson, Plaintiff states that they have instituted policies which "allow miscreant [corrections officers] to violate the rights of prisoners without fear of consequences."  (*Id.*).  Plaintiff alleges that complaints raised by officers are heard the following day, while prisoner complaints can go as long as a month before a hearing, which usually results in no consequences for the officer.  (*Id.*).  Plaintiff also alleges that the new inquiry form does not provide prisoners the opportunity to report an officer's behavior.  (*Id.*).  Plaintiff thus asserts that Lanigan and Nelson, alongside supervisory Lt. St. Paul, who apparently was well aware of the allegedly violent ways of Wasik, Doyle, and Marsh, should be liable for the injuries inflicted upon him by Wasik, Doyle, and Marsh.

In the supplement included in Plaintiff's amended complaint, he asserts that after he filed this action and served it upon the corrections officer Defendants, he suffered several retaliations. Specifically, Plaintiff alleges that his original complaint was served upon Defendant Wasik on May 27, 2015.  (*Id.* at 17).  Plaintiff further states that, two days later, he was handcuffed by Defendants Everett, Morales, and an unknown sergeant and taken to the detention unit.  (*Id.*).

Plaintiff also claims that the handcuffs were painfully tight, and that he asked to have them loosened, to no avail.  (*Id.*).  While Plaintiff was being taken to the detention unit, Defendant Wasik apparently said to Plaintiff "You wanna sue me? Have a nice time at South Woods, bye Felisha, bye Felisha, hope you like South Woods."  (*Id.*).

Plaintiff states that, when he arrived at the detention unit, he complained to a nurse that his wrists hurt, but the nurse refused to deal with the problem.  (*Id.*).  Plaintiff was then taken into the unit, and apparently "strip search[ed] . . . in front of the entire unit and in view of the camera" by Defendant Morales.  (*Id.*).  Plaintiff was then placed into a cell without a functioning toilet or running water and held there between May 29 and June 2, 2015.  (*Id.* at 17-18).  While he was in the cell, Plaintiff states that he was served "spoiled food" which he didn't eat, and was told that he would "beat" a charge against him which he never received.  (*Id.* at 18).  Plaintiff also continued to complain about wrist pain to a social worker, psychologist, and nurse.  (*Id.*).

On June 2, 2015, Plaintiff was transferred to East Jersey State Prison, a maximum rather than medium security prison.  (*Id.*).  Following being seen by another nurse who informed him he should put in a medical request if he wished to have his wrists seen to by medical personnel, Plaintiff was taken to his new cell.  (*Id.* at 18-19).  Plaintiff claims that his new cell has a leaking issue wherein a crack in the ceiling leaks whenever the toilet is flushed in the cell above him as well as at other times.  (*Id.*).  Plaintiff further states that, due to the leaking, there is mold and the like growing in his cell, which he believes is causing various vague medical issues.  (*Id.* at 19).  Plaintiff also complains of a lack of hot water as well as a "barely work[ing]" toilet, which he was told would be fixed.  (*Id.*).

Plaintiff also complains about two policies in place at East Jersey State Prison.  First, the

4

prison does not permit prisoners to wear their hair in a braided fashion during visits.   (*Id.*). Plaintiff specifically states that this policy was put into place after it was discovered that prisoners were attempting to smuggle drugs into the prison by having their visitors braid the contraband into their hair during visits.   (*Id.*).   Plaintiff also complains that he has been denied the use of an "afro-pick," as the picks are not permitted under prison policy.   (*Id.*).   Finally, Plaintiff asserts that, because he was not permitted to pack his own belongings before being transferred, some of his personal belongings were lost and have not been sent to him.   (*Id.* at 20).

## II.  DISCUSSION

### A.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).   According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible.   *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B.   Analysis**

The vast majority of Plaintiff's claims are essentially civil rights claims brought pursuant to 42 U.S.C. § 1983.   That statute provides "private citizens with a means to redress violations of federal law committed by state individuals."   *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).   To assert a claim under the statute, Plaintiff must show that "he was a deprived of a federal constitutional or statutory right by a state actor."   *Id.*   When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims was violated and determine whether Plaintiff has properly alleged the violation of such a right at all. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).   In his amended and supplemental complaint, Plaintiff raises numerous § 1983 claims including Eighth Amendment excessive force claims, an Eighth Amendment failure to protect claim, Eighth Amendment conditions of confinement claims, Fourteenth Amendment Due Process claims arising out of the deprivation of property, and First Amendment retaliation claims. Plaintiff also seeks to raise state law claims including harassment, assault, and intentional infliction of emotional distress claims.   Defendants, in their motion, seek the dismissal of nearly all of those claims.   This Court will address each of Defendants' arguments in turn.

**1.   Defendants are not entitled to Eleventh Amendment Immunity, but the Prison and Department of Corrections must be dismissed from this matter**

Defendants first argue that, despite the fact that they removed this action to Federal Court, they should still be entitled to Eleventh Amendment Immunity.   As the Supreme Court has made abundantly clear, a state waives its Eleventh Amendment immunity when it removes a case from state court to federal court.   *See Lapides v. Bd. Of Regents Sys. Of Georgia*, 535 U.S. 613, 619 (2002) (a "State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity").   The case on which Defendants rely to make their argument, *Lombardo v. Pennsylvania*, 540 F.3d 190, 198 (3d Cir. 2008), does not suggest otherwise.   *Lombardo* instead stands for the proposition that, although a state waives its Eleventh Amendment immunity from suit in a federal court by removing, the state retains its own state sovereign immunity.   *Id.* at 198, 198 n. 8.   Thus, while a state gives up its claim to immunity from suit in federal court by removing an action from state court, it retains any defenses it would have been able to assert in its own courts, including sovereign immunity.   *Id.* at 198-99.

The importance of this latter point goes not to Eleventh Amendment immunity from suit in a federal court, but rather to the personhood of some of the Defendants for the purposes of § 1983.   Under the statute, a state, a department of a state, or a subsection of such a department or other organized arm of the state, is not a "person" subject to suit under § 1983.   *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280-81.   Thus, a plaintiff may not bring a suit under the statute against a state, one of its departments, or a prison operated by such a department.   *Id.*; *see also Ewing v. Cumberland Cnty.*, No. 09-5432, 2015 WL 1384374, at *25 (D.N.J. Mar. 25, 2015); *Brown v. New Jersey Dep't of Corr.*, No. 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014); *Grabow v. S.*

7

*State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (State department of corrections and state prison facilities are not "persons" under § 1983).   Thus, this Court will dismiss the New Jersey Department of Corrections and Northern State Prison from this matter with prejudice. *Grohs*, 984 F. Supp. 2d at 280-81.

Defendants also argue that the individual Defendants must be dismissed from this matter to the extent they are named in their official capacities.   Where a Plaintiff is seeking money damages, a claim against a state official acting in his official capacity is a suit against that official's office, and in turn a suit against the entity which employs him.   *Id.* at 281.   Thus, to the extent a plaintiff seeks money damages, a state official acting in his official capacity is not a person under § 1983, and is not subject to suit.   *Id.*   Where a plaintiff seeks only injunctive or prospective relief, a state official may be sued in his official capacity as "[o]fficial-capacity actions for prospective relief are not treated as actions against the state."   *Id.* (quoting *Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 n. 10 (1989)).   In his amended complaint, Plaintiff specifically states that "the defendants are not being sued for damages in their official capacities, the[y're] only being sued for injunctive relief in their official capacities and for damages in their individual capacities." (ECF No. 20 at 21).   Thus, Plaintiff does not seek money damages against any Defendant in his official capacity, and Plaintiff's official capacity claims need not be dismissed on that basis.

**2.   Plaintiff's Eighth Amendment Claims**

Defendants argue that Plaintiff fails to state a claim for any of his Eighth Amendment claims.   In his amended complaint, Plaintiff pleads several Eighth Amendment claims: an Eighth

8

Amendment excessive force claim related to the commissary paper cut incident, a failure to protect claim related to that same incident, a conditions of confinement claim regarding his being made to stand in "freezing rain" without a coat for approximately half an hour, a second excessive force claim regarding the use of handcuffs on him while he was being transported within Northern State Prison, a conditions of confinement claim related to the cell in which he was housed in the detention unit therein, another conditions of confinement claim related to the cell he is housed in in East Jersey State prison as well as certain policies regarding braids and hair picks, claims for deliberate indifference to Plaintiff's medical needs, and a strip-search related claim.   This Court will address each of these claims in turn, starting with Plaintiff's excessive force claims.

### a.   Plaintiff's Excessive Force Claims

Plaintiff raises two claims of excessive force arising under the Eighth Amendment – one for the use of handcuffs during transportation within the prison, and one for the paper cut incident.

> The test for whether a claim of excessive force is constitutionally actionable is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley v. Albers*, 475 U.S. 312, 319 [] (1986).   The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  *Id.*; *see also Brooks* [*v. Kyler*], 204 F.3d [102, 106 (3d Cir. 2000)].

*Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).   Where only a *de minimis* amount of force is used, and the type of force is not of a sort "repugnant to the conscience of mankind," no excessive force claim has been pled.  *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992).

In his first claim, Plaintiff asserts that a corrections officer used excessive force against him by ripping a sheet of paper from his hand, resulting in the sheet of paper giving Plaintiff a paper cut.   As to this claim, Plaintiff has not actually pled that the officer used force against him, only that the officer pulled the paper away from his hand.   That Plaintiff was cut was a side effect of the snatching of the paper from his hand, and not the direct and obvious result of the officer's actions.   As the officer used no actual force against Plaintiff in that incident, but only pulled the paper from his hand, Plaintiff has failed to plead an application of force against him, and thus has not pled a cognizable claim for relief under the Eighth Amendment for excessive force as he has pled at best a *de minimis* use of force directed at the paper in his hand, and not personally at Plaintiff.   *Id.*   Plaintiff's excessive force claim related to the paper incident must therefore be dismissed without prejudice at this time.

Plaintiff's second claim relates to his being handcuffed while being moved from his original cell to the detention unit in Northern State Prison.   As to this second incident, Plaintiff essentially asserts that he was tightly handcuffed, that he complained about the handcuffs and the officers did not loosen them, and that the cuffs were not removed until he was placed into his new cell in the detention area of Northern State Prison.   From the fact that Plaintiff was only handcuffed during transportation between areas of the prison, it appears that this application of "force" was relatively minor and clearly served the purpose of maintaining safety and security during Plaintiff's transfer to the detention unit.   As Plaintiff has pled no facts other than his discomfort to suggest any improper motivation (such as malicious or sadistic purposes), Plaintiff's second claim also falls short of pleading a proper Eighth Amendment claim for excessive force and must also be dismissed without prejudice.   *See Giles*, 571 F.3d at 326; *see also Lizama v.*

*Hendricks*, No. 13-3177, 2014 WL 673103, at *6 (D.N.J. Feb. 20, 2014) (use of overly tight handcuffs does not establish Eighth Amendment excessive force claim absent facts showing an improper motive or more than a minimal use of force).   Thus, all of Plaintiff's excessive force claims shall be dismissed without prejudice.[2]

**b.  Plaintiff's Failure to Protect Claims**

Plaintiff also attempts to plead a claim for failure to protect arising out of the paper cut incident.   In this claim, Plaintiff essentially asserts that two officers watched while the paper was snatched from his hand, resulting in the paper cut, without intervening.   To state a claim for a failure to protect under the Eighth Amendment, a plaintiff must plead facts showing that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Parkell v. Markell*, 622 F. App'x 136, 139 (3d Cir. 2015 (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).   "An official acts with deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health or safety. *Farmer*, 511 U.S. at 837[].   It does not matter 'whether a prisoner faces an excessive risk of attack for reasons personal

---

[2]  In attempting to plead excessive force claims, Plaintiff has also alleged that he was verbally harassed, chastised, and insulted by the various guards.   These allegations are also insufficient to establish a constitutional violation, and to the extent that Plaintiff's excessive force claims are based on these verbal insults, Plaintiff's claims must also be dismissed.   *See, e.g., Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009) (verbal harassment alone not actionable); *Durant v. Horn*, Civil Action No. 07-93, 2007 WL 1575186, at *2 (D.N.J. May 30, 2007) (verbal harassment and/or profanity "no matter how inappropriate, unprofessional, or reprehensible [do] not constitute the violation of any federally protected right and therefore [are] not actionable under" § 1983).

to him or because all prisoners in his situation face such a risk.' *Id.* at 843[]." *Parkell*, 622 F.

App'x at 139.   As this court explained above in relation to Plaintiff's excessive force claim, the

officer who snatched the paper away from Plaintiff did not attack him, nor actually use force

against Plaintiff.   He merely pulled a paper away from Plaintiff in haste, resulting in a paper cut

to Plaintiff's hand.   Under those circumstances, it cannot be said that the other officers acted with

deliberate indifference because they would not have known of a substantial risk of harm to Plaintiff

from the pulling of a paper.   As such, Plaintiff has failed to plead facts indicating deliberate

indifference, nor does the paper cut incident indicate that there was a serious risk of harm, and as

such Plaintiff has failed to plead a proper failure to protect claim.   *Id.*   Plaintiff's failure to protect

claim must therefore be dismissed without prejudice.


### c.   Plaintiff's Conditions of Confinement Claims

Plaintiff also raises several conditions of confinement claims inclduing one for being

housed in a poorly maintained cell for a few days where he was allegedly served spoiled food, and

another based on the mold and fungus growing in his current cell, which he alleges are exacerbated

by leaks in the ceiling of his cell.   As the Supreme Court has explained, the Constitution "does

not mandate comfortable prisons," and "only those deprivations denying 'the minimal civilized

measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment

violation."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted, quoting *Rhodes

v. Chapman*, 452 U.S 337 (1981)); *see also Watson v. Secretary Penn. Dep't of Corr.*, 567 F.

App'x 75, 79 (3d Cir. 2014).   Thus, to plead an Eighth Amendment conditions of confinement

claim, a Plaintiff must first plead an objective element: that the conditions under which he was

12

housed were sufficiently serious as to deny him the minimal civilized measure of life's necessities. *Wilson*, 501 U.S. at 298; *Watson*, 567 F. App'x at 79.   In determining whether the conditions alleged are sufficiently serious, one must take into account a variety of factors including the level of deprivation and the length of time it was imposed upon the plaintiff.   Watson, 567 F. App'x at 79.   In addition to this objective component, a Plaintiff must also plead a subjective element: that the defendants acted with a sufficiently culpable state of mind.   *Id.*   This requires Plaintiff to properly allege that Defendants acted with "deliberate indifference, a state of mind equivalent to a reckless disregard of a known risk of harm."   *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *3 (D.N.J. Oct. 2, 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson*, 501 U.S. at 303.

Plaintiff, in his first conditions of confinement claim, alleges that, as punishment for his refusal to sign the confiscation forms in the paper-cut incident, he was made to stand out in the freezing rain without proper attire, including a coat, for approximately half of an hour.   In this instance, Plaintiff has pled the subjective element: that the officers specifically ordered this as a form of punishment while ignoring the health risks which could result from being made to stay out in the freezing rain without a coat for a moderate length of time.   Giving pro se Plaintiff the benefit of all reasonable inferences regarding this situation, Plaintiff has also satisfied the objective pleading requirement insomuch as he has pled that he was placed into a dangerous situation wherein he was deprived of one of life's necessities (shelter and proper clothing in the face of freezing rain for half an hour).   Although the duration of the deprivation was relatively short in this instance, depending on the nature of the alleged freezing rain, including the outdoor temperature and amount of freezing rain, such a deprivation of clothing and shelter could certainly

13

present a severe enough risk of harm to meet the pleading requirements for a conditions of confinement claim.   *Wilson*, 501 U.S. at 298-303.   As such, this claim will be allowed to proceed at this time.

In his second conditions of confinement claim, Plaintiff asserts that, during a period of a few days between his being placed in detention at Northern State Prison and his being transferred to East Jersey, he was placed into a cell with poor plumbing, a toilet of limited functionality, and was served food of poor quality which he claims was spoiled.   Because Plaintiff was faced with this situation for a relatively short period, only a matter of days, and Plaintiff has not pled that he suffered any harm as a result of this short period of detention in an uncomfortable cell, Plaintiff has not pled a sufficiently severe deprivation to make out the objective element of an Eighth Amendment conditions of confinement claim.   This Court will therefore dismiss Plaintiff's conditions of confinement claim related to his time in Northern State Prison's detention unit without prejudice.

In his final conditions of confinement claim, Plaintiff asserts that he has been placed into a cell at East Jersey State Prison which contains various kinds of mold, fungi, and other flora which he believes present a danger to his health, is again subject to poorly functioning plumbing, and is faced with a ceiling which leaks every time the toilet is flushed in the cell above his.   Thus, Plaintiff has essentially pled that his new cell is teeming with dangerous fungi and mold, that he is exposed to waste water from an adjacent cell, and believes that he is suffering medical issues such as headaches and the like as a result.   Giving Plaintiff the benefit of all reasonable inferences, and noting the danger that certain types of mold can pose to people constantly exposed to them, this Court finds that this claim presents allegations of a sufficiently severe deprivation.   As

14

Plaintiff has pled that the prison is aware of the conditions, and has not remedied them, especially in the case of the mold and fungi in the cell (and indeed, has pled that his own efforts to limit his exposure have been undone by orders from prison staff), Plaintiff has also pled that prison staff have been deliberately indifferent to these issues.   Thus, Plaintiff's conditions of confinement claim related to his time at East Jersey State Prison states a cognizable claim for relief and will not be dismissed.

Because this Court is permitting this final conditions of confinement claim to proceed, the Court must note that certain allegations Plaintiff has made in relation to that claim do not state a claim for relief, and do not form a part of the basis for proceeding that claim.   Specifically, in addition to the mold and leak issues, Plaintiff also pleads that prison policy prevents him from wearing braids to visits and prevents him from purchasing afro picks.   As to the braids, Plaintiff specifically pleads that this policy was adopted after other inmates used their hair braids to attempt to smuggle drugs into the prison.   Given this fact, the prison clearly had a penological interest in limiting the wearing of braids to the visitation room, and the restriction on braids is therefore reasonable.   In any event, it is clear that preventing Plaintiff from wearing braids and forcing him to use hair care implements other than afro picks do not deprive Plaintiff of the "minimal civilized measure of life's necessities" and as such, his allegations regarding braids and afro picks fail to state a claim for relief, and to the extent Plaintiff's conditions of confinement claim is based on those allegations, Plaintiff's claim is dismissed without prejudice.   *Wilson*, 501 U.S. at 298; *Watson*, 567 F. App'x at 79.   Plaintiff's claim against East Jersey State Prison is thus proceeding only on the basis of a combination of Plaintiff's claims including the lack of hot water, leaking ceiling, and mold and fungal growth.

### d.  Plaintiff's Deliberate Indifference to Medical Needs Claim

Plaintiff also attempts to plead a claim that jail staff were deliberately indifferent to his medical needs insomuch as they did not treat his paper cut and allegedly injured wrists to his satisfaction.[3]  A Plaintiff's Eighth Amendment rights are violated where a prison official is deliberately indifferent to his serious medical needs.  *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983)); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state a claim for deliberate indifference, a plaintiff must plead both a sufficiently serious medical need, and that Defendants were deliberately indifferent thereto.  *King*, 302 F App'x at 97.  A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a need that] is so obvious that a lay person would easily recognize the necessity of a doctor's attention."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988).  In this context, deliberate indifference is in turn established where the prison official involved acted with a reckless disregard of a substantial risk of harm.  *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994); *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013).

In his complaint, Plaintiff states that he was taken to medical for his paper cut and was given an antibiotic ointment.  As such, officials clearly were not indifferent to his needs as to the cut.  As to his alleged wrist injuries, he claims he was seen twice, first in the detention unit by a

---

[3]  To the extent that Plaintiff also wished to raise a claim regarding exposure to the mold, this Court has construed those allegations as presenting a conditions of confinement claim, and any medical claim related thereto would be subsumed into that claim.  Thus, in this section, the Court discusses Plaintiff's allegations regarding his wrists and the paper cut only.

nurse who did nothing to treat his wrists, and second by a nurse at East Jersey State Prison who told him to fill out a medical slip if he needed treatment for his wrist injuries.   The only injury Plaintiff claims in these instances was the alleged harm to his wrists resulting from the allegedly too-tight handcuffs.   Although Plaintiff has pled that he was in severe pain, Plaintiff has not pled any facts which would suggest that the alleged wrist injuries were so severe that they should have been patently obvious, nor has he pled any facts showing that he has since been diagnosed with any resulting injuries.   As such, Plaintiff has failed to plead a sufficiently serious injury, and his medical claims must be dismissed without prejudice at this time as a result.   Although that conclusion resolves Plaintiff's claims for the purposes of this inquiry, that Plaintiff was told he could fill out a medical slip if he needed further treatment also suggests that the nurse at East Jersey, at least, was not acting with reckless disregard when she did not treat Plaintiff's wrists during intake, but instead directed Plaintiff to the correct manor in which to seek treatment.   Thus, Plaintiff's claim as to the East Jersey nurse suffers from that deficiency as well.

**e.  Plaintiff's Strip Search Claim**

Plaintiff's final Eighth Amendment claim arises out of his allegations that he was strip searched in front of the entire detention unit and a camera at Northern State Prison.   A prisoner may challenge a strip search under either the Fourth or Eighth Amendment.   *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011).   A plaintiff may make out a Fourth Amendment claim by alleging that the strip search was unreasonable under the circumstances.   *See, e.g., Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992); *see also Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, *16-17 (D.N.J. Mar. 29, 2012).   Where, however, a plaintiff challenges a strip search based on the manner in which it was conducted, rather than challenging the very fact that it was conducted, such a challenge is cognizable under the Eighth Amendment.   *See Jordan*, 428 F. App'x at 199-200; *see also Florence v. Bd. Of Chosen Freeholders of Cnty. of Burlington*, --- U.S. ---, --- ,132 S. Ct. 1510, 1523 (2012) (Eighth Amendment may be implicated where a strip search is carried out in such a way as to intentionally humiliate or abuse a prisoner, citing *Hudson v. Palmer*, 468 U.S. 517, 528 (1984)); *Robinson*, 2012 WL 1067909 at *16-17.

Here, it does not appear that Plaintiff is specifically challenging the strip search as unreasonable per se insomuch as it was undertaken while he was being transferred, but rather on the basis of his allegations that the search was conducted in an abusive and humiliating manner. Such a challenge would arise under the Eighth Amendment.   *Jordan*, 428 F. App'x at 199-200; *Florence*, 132 S. Ct. at 1523; *Hudson*, 468 U.S. at 528; *Robinson*, 2012 WL 1067909 at *16-17. Plaintiff has specifically pled that he was strip searched in plain view of all of the other inmates as well as in full sight of a camera.   Giving Plaintiff the benefit of all reasonable inferences, these facts are sufficient to plead a claim for relief under the Eighth Amendment.

### 3.   Plaintiff's Fourteenth Amendment Due Process Claim

The Defendants also seek the dismissal of Plaintiff's Fourteenth Amendment claims for the deprivation of his property.   In his amended complaint, Plaintiff raises two deprivation of property claims: that he was deprived of his commissary receipt without being issued a confiscation slip in the first incident; and that some of his personal property was lost, stolen, or misplaced during his transfer to East Jersey State Prison.   To assert a Due Process claim for the deprivation of one's property by a public official, a plaintiff must assert that he possessed a property interest, that he was deprived of that interest by a state actor, and that he was not provided notice and an opportunity to be heard in relation to the taking of his property interest.   *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002).   "Where a state actor deprives an individual of property without authorization, [however,] either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available.   *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds*, *Daniels v. Williams*, [474 U.S. 327] (1986)."   *Love v. New Jersey Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015); *see also Miller v. Fraley*, No. 12-4470, 2015 WL 511296, at *11 (D.N.J. Feb. 6, 2015).   The State of New Jersey has provided a proper post-deprivation remedy to plaintiffs for the unauthorized deprivation of their property through the New Jersey Tort Claims Act.   *See N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Love*, 2015 WL 2226015 at *5; *Miller*, 2015 WL 511296 at *11.   Thus, Plaintiff's claims would only state a cognizable § 1983 claim to the extent that he claims that he was deprived of his property pursuant

19

to an authorized state procedure, and not as a result of the unlawful or unauthorized actions of various prison personnel.   *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982).

As to the loss of Plaintiff's property during his move from Northern to East Jersey State Prison, it is clear that Plaintiff essentially alleges that his property was lost, stolen, or purposefully discarded during the transition, and that Plaintiff has not alleged that this deprivation arose out of established state procedure.   Thus, Plaintiff's claims arising out of the loss of his property during transfer fail to state a claim for relief because Plaintiff has an available post-deprivation remedy via the Tort Claims Act.   *Love*, 2015 WL 2226015 at *5.   That Plaintiff has allegedly filed such a claim and received no relief is of no moment.   The question is not whether Plaintiff can succeed on his claim, but rather whether he has been provided with sufficient legal process.

Plaintiff's other deprivation of property claim is somewhat more complex.   In his other claim, Plaintiff alleged that his commissary receipt was taken from him without being issued a confiscation sheet.   Thus, at least to some extent, Plaintiff does assert that the officers took his receipt without following proper procedure.   In responding to the motion to dismiss, however, Plaintiff attempts to clarify by arguing that he was not alleging that his receipt was taken in the absence of established state procedure, but rather that Defendants did not follow the procedure to the letter, presumably as emblematic of their lack of concern with the proper procedures.

This Court need not decide whether the taking of Plaintiff's receipt was sufficiently intertwined with proper state procedure that a pre-deprivation remedy was necessary.   Although the gravity of a deprivation of property is generally of no moment to the question of whether a constitutional violation occurred, the Constitution is not concerned with "*de minimis* level[s] of imposition" and a deprivation of property which is *de minimis* will not state a claim for a denial of

20

Due Process.  *Falter v. Veterans Admin.*, 632 F. Supp. 196, 211-212 (D.N.J. 1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also In re App. For Installation of a Pen Register*, 610 F.2d 1148, 1156 (3d Cir. 1979) (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)); *FiberMark N. Am., Inc. v. Jackson*, No. 07-839, 2007 WL 4157235, at *6 (D.N.J. Mar. 28, 2007). Absent any facts to suggest that there was any special significance or importance to the receipt, this Court finds that the taking of Plaintiff's commissary receipt is at worst *de minimis* and is therefore insufficient to sustain a Due Process claim for the deprivation of property.   This Court will therefore dismiss all of Plaintiff's deprivation of property claims without prejudice.

**4.  Plaintiff's False Disciplinary Charge Claims**

Defendants also move to dismiss Plaintiff's claim that he was issued a false disciplinary charge arising out of the commissary incident.   "[T]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights," it is only when the plaintiff is denied due process in relation to the false charges that a constitutional violation occurs.  *Poole v. Mercer Cnty. Corr. Ctr.*, No. 11-3730, 2012 WL 694689, at *2 (D.N.J. Feb. 29, 2012); *see also Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 36 (3d Cir. 2010) (the "filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges"); *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002).   In this matter, Plaintiff does not allege that he was denied a hearing and opportunity to be heard on his disciplinary charges.   Indeed, in his response to the motion to dismiss, Plaintiff specifically states that not only was he given a hearing, but he also states that the charges against him were "thrown out" or dismissed.   (ECF No. 31 at 9-10).   As Plaintiff was acquitted of the disciplinary charges,

he was not denied due process as to those charges, and no constitutional violation resulted from the "false" disciplinary charges filed against him.[4]

**5.   Plaintiff's First Amendment Retaliation Claim**

Defendants also seek the dismissal of Plaintiff's First Amendment retaliation claim.   "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."   *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).   "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."   *Thomas*, 463 F.3d at 296 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

In their motion, Defendants do not appear to dispute that the filing of the initial complaint in this matter was constitutionally protected, nor that Plaintiff's transfer and strip search are sufficient to deter a person of ordinary firmness from engaging in protected activity, nor, under the facts presented, could they dispute that the complaint sufficiently pleads both of those elements

---

[4]  To the extent that Defendants have argued that this Court lacks jurisdiction over Plaintiff's claims, they are incorrect.   Although it is true that the Appellate Division in New Jersey, rather than this Court, has jurisdiction over a direct appeal of Plaintiff's disciplinary matter, Plaintiff is clearly not challenging the <u>result</u> of his hearing (which apparently was in his favor), but rather the filing of the charges themselves, which, were Plaintiff to have a claim, would be to assert a due process claim over which this Court would certainly have jurisdiction under § 1983.   *See, e.g., Mimms*, 386 F. App'x at 36.

of a retaliation claim.   Instead, Defendants argue that officers Everett and Morales lacked knowledge of the pleading and a motive to retaliate, and thus Defendants assert that there is no causal nexus between Plaintiff's filing of his complaint and his transfer and search.   In making that argument, Defendants completely ignore that Plaintiff pled that, while he was being led out of his cell, Plaintiff was specifically told by one of the officers involved in the commissary paper cut incident that he was being sent to South Woods because of his filing of the complaint.   As one would assume that Morales could hear this taunt just as well as Plaintiff, it would be entirely fair to infer that Morales knew about the suit.   As the taunting officer apparently knew of the transfer (albeit, not the prison in which Defendant would ultimately be placed), it would likewise be fair to infer that Everett and Morales also knew about the potential transfer.   As Plaintiff has also pled that Morales and company tightly handcuffed him, led him away, and strip searched him *in retaliation for* filing a complaint against their coworker, Plaintiff has pled a claim for First Amendment retaliation, and Defendants' motion is denied as to that claim.

### 6.   Supervisory Liability for Plaintiff's § 1983 Claims[5]

Defendants also argue that various prison supervisors should be dismissed from this action as Plaintiff has only pled claims against them based upon vicarious liability.   A civil rights claim under § 1983 or its federal counterpart may not be predicated solely on vicarious liability.   *See Iqbal*, 556 U.S. at 675-76; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A "defendant in a civil rights action must have personal involvement in the alleged wrongs" and a

---

[5] In addition to the Defendants discussed in full here, Plaintiff adds as Defendants several John Doe Supervisors.   As Plaintiff has pled no facts as to these alleged supervisors, Plaintiff's claims against them shall be dismissed without prejudice at this time.

plaintiff must therefore plead a supervisory defendant's involvement through means other than *respondeat superior*.  *Rode*, 845 F.2d at 1207-08.  Thus, a civil rights plaintiff must plead facts showing that each defendant, including supervisory defendants, had personal involvement in the violation of his rights either through "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015). Generally, a plaintiff can show the participation of a supervisor by pleading either that the supervisor's "establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, Civil Action No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)).  Thus, each supervisor's conduct must be examined individually to determine whether Plaintiff has pled sufficient facts to establish personal involvement.

The first, and most direct, supervisor named by Plaintiff is Lt. St. Paul.  Plaintiff names St. Paul claiming that St. Paul failed to chastise his subordinates, knew of their violent tendencies, and did nothing to curtail them, resulting in the excessive force and failure to protect claims Plaintiff attempted to plead regarding the paper-cut incident.   As Plaintiff's direct excessive force and failure to protect claims fail to state a claim for relief for the reasons expressed above, Plaintiff's supervisory claim against St. Paul arising out of those same claims must in turn be dismissed.   Thus, Lt. St. Paul will be dismissed from this action without prejudice.

Plaintiff also names as Defendants in his original complaint Gary Lanigan and Administrator Nelson of Northern State Prison.   As with St. Paul, to the extent Plaintiff names these Defendants as to Plaintiff's excessive force and failure to protect claims, those claims must be dismissed as to Nelson for the same reasons they were dismissed as to Officers Marsh, Doyle, and Wasik.   As it does not appear that Plaintiff names these Defendants in reference to any of his other claims at this time, Defendants' motion shall be granted as to them, and Defendants Nelson and Lanigan will be dismissed from this action without prejudice.

In his amended complaint, Plaintiff also adds claims against Steven Johnson of Northern State Prison and Patrick Nogan of East Jersey State Prison.   As to Johnson, Plaintiff pleads that Johnson was directly responsible for ordering the other Defendants to retaliate against Plaintiff following his filing of a civil suit.   As such, Plaintiff has directly pled the involvement of Johnson in the alleged retaliation, and that claim against him must be permitted to proceed at this time. *Doe*, 2015 WL 3448233 at *9.   To the extent that Plaintiff seeks to raise that retaliation claim against Patrick Nogan, however, Plaintiff has not pled facts sufficient to establish that Nogan was aware of the suit and accepted Plaintiff's transfer in order to retaliate against Plaintiff.   As such, that claim must be dismissed as to Nogan.   To the extent that Plaintiff has pled that Nogan knows of the conditions of Plaintiff's current cell, including the mold and leak issues, and has taken no actions to fix the problem, however, he has stated a claim against Nogan, and that claim shall proceed as explained above.

## 7.   Qualified Immunity

Defendants argue that this Court should also dismiss Plaintiff's various civil rights claims

under the doctrine of qualified immunity.   In so doing, however, Plaintiff's only argue that Plaintiff has failed to establish the first prong of qualified immunity – that Defendants violated Plaintiff's constitutional rights.   As this Court has explained above, Plaintiff has stated a claim for relief based on constitutional violations in relation to several of his claims including First Amendment retaliation, Eighth Amendment conditions of confinement, and an Eighth Amendment strip search claim.   As such, Plaintiff has established, for the purposes of pleading, that Defendants violated his constitutional rights.   As Defendants have not argued that these constitutional claims are not clearly established, Defendants have not shown that they are entitled to qualified immunity as to the claims this Court permits to proceed, and Defendants motion as to qualified immunity is denied without prejudice.

**8.  Plaintiff's State Law Claims**

In addition to all of his federal claims, Defendants also seek the dismissal of Plaintiff's state law tort claims.   Specifically, Plaintiff attempts to raise the following state law tort claims: harassment claims against Defendant Wasik for taunting him during the transfer; a harassment claim against Wasik, Marsh, and Doyle for threatening to tear up Plaintiff's cell if he files a lawsuit against them; a state law assault claim against Wasik, Marsh, and Doyle for the paper-cut incident, and a state law claim for intentional infliction of emotional distress against Wasik, Marsh, and Doyle for the paper-cut incident.

As to Plaintiff's harassment claims, the New Jersey Appellate Division has explained that a plaintiff

> is not able to make out a [stand-alone harassment] cause of action as a matter of law.   Harassment is a violation of [New Jersey's]

criminal code, N.J. [Stat. Ann. § 2C:33-4], and has not been recognized in New Jersey as a tort action for damages.   In *Aly v. Garcia*, [the New Jersey Appellate Division] stated that "[w]e leave for another day the decision as to whether [the criminal harassment statute] creates a civil cause of action."   [754 A.2d 1232, 1236 (N.J. App. Div. 2000).]   There, we explained that a comparable tort action for emotional damages has been available since 1988, when the [New Jersey] Supreme Court recognized a cause of action for intentional infliction of emotional distress in *Buckley v. Trenton Saving Fund Society*, [544 A.3d 857] ([N.J.] 1988).

> In *Aly*, we summarized the proofs needed to establish a cause of action for emotional distress as follows:

>> In order to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.   The distress must be so severe that no reasonable person could be expected to endure it.   Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.   It is not enough to establish that a party is acutely upset by reason of the incident.   In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae.

> [754 A.2d at 1236-37].

> We continued in *Aly* that, "even if there is a civil cause of action for damages for harassment when the sole damages claimed are emotional distress, it would be inappropriate not to hold plaintiffs to the same elevated standard of showing severe emotional distress."   *Id.* at [1236-37].

*Chrzanowski v. Harriz*, 2015 WL 4207159, at *3-4 (N.J. App. Div. July 14, 2015).

As *Chrzanowski* makes clear, because Plaintiff here presents no damages other than emotional for his alleged harassment claims, those claims are subject to the same pleading requirements as to severe emotional distress as would apply in an intentional infliction of

emotional distress claim.   As Plaintiff's complaint does not contain any allegations of any sufficiently severe emotional distress resulting in physical illness or serious sequelae arising out of his treatment by the officers in either of the two incidents he raises, his claims for both harassment and intentional infliction of emotional distress must be dismissed without prejudice at this time.[6]

Thus, the final claim this Court must discuss is Plaintiff's New Jersey tort claim for assault against Wasik, Marsh, and Doyle, arising out of the paper-cut incident.   A claim for assault under New Jersey law requires a plaintiff to plead that the defendant "act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . the other is thereby put in such imminent apprehension."   *Leang v. Jersey City Bd. Of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009).   In his complaint, Plaintiff states that his assault claim arises out of the use of force against him during the paper cut incident.   Plaintiff, however, does not plead any facts showing that force was used against him, only that an officer snatched a sheet of paper from his hand, indirectly causing Plaintiff to suffer a paper cut.   Thus, Plaintiff has not pled sufficient facts to establish anything more than a bald assertion that the officer either acted intending to cause a harmful contact with Plaintiff, nor to place Plaintiff in fear of such a contact.   Plaintiff's assault claim will therefore be dismissed without prejudice at this time.   *Id.*

## III. CONCLUSION

For the reasons stated above, this Court grants in part and denies in part Defendant's motion

---

[6] It is also doubtful that the conduct here, which essentially amounts to threats of cell searches and name calling, is outrageous enough to support an intentional infliction of emotional distress claim in any event.

to dismiss.   An appropriate order follows.


May 12, 2016                                              _s/ Susan D. Wigenton_____
                                                         Hon. Susan D. Wigenton,
                                                         United States District Judge