UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

<u>NOT FOR PUBLICATION</u>

| | |
|---|---|
| LOVE,<br><br>               Plaintiff,<br><br>v.<br><br>NJ DEPT OF CORRECTIONS, et al.<br><br>          Defendants. | Civil Action No.<br><br>**OPINION & ORDER ON DISCOVERY DISPUTE**<br><br>2:15-CV-4404-SDW-SCM<br><br>**[D.E. 103]** |

**Steven C. Mannion**, United States Magistrate Judge.

Before this Court is Plaintiff, Lemont Love's ("Mr. Love") informal motion to compel further discovery responses from Defendants, Robert Wasik, Gerard Doyle, and Ruben Morales ("the Northern State Officers" or "Officers").[1] The Northern State Officers opposed.[2] The Court has reviewed the parties' respective submissions and decided this application without oral argument. For the reasons set forth herein, the motion is **granted in part and denied in part**.

---

[1] (ECF Docket Entry No. ("D.E.") 103). The Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] (D.E. 107).

## I.  BACKGROUND AND PROCEDURAL HISTORY[3]

A.  Factual Background

Mr. Love initiated this § 1983 civil rights case action against the Northern State Officers based on  an incident arising from his visit to the prison canteen at Northern State Prison.[4]  The facts pertinent to this application were previously stated as follows:

> [O]n November 1, 2014, Plaintiff purchased several items from the prison canteen. (ECF No. 20 at 10-11). While [there, he] helped another prisoner carry several items … and the other prisoner left. (Id.). After the other inmate had departed, Plaintiff, however, apparently had inadvertently failed to return to him a jar of hair grease…. (Id.). [W]hile leaving the canteen, C.O. Marsh stopped him to check his purchases against his receipt … and discovered Plaintiff had not purchased the hair grease. (Id.). Marsh instructed Plaintiff to throw it away, but Plaintiff refused and requested to speak to a sergeant. (Id.). Plaintiff was then instructed to follow Marsh into another room, at which point Marsh allegedly began to threaten and berate Plaintiff verbally. (Id.). A second officer, C.O. Wasik, was also in the room at the time, and also apparently yelled at and insulted Plaintiff. (Id.). Plaintiff again requested to speak with a sergeant, but the officers refused and threatened … him. (Id.).
>
> Plaintiff was then led into another room and told to sit down. (Id.). Wasik, Marsh, and a third corrections officer named Doyle then all again began to verbally berate Plaintiff until Wasik departed to retrieve the other inmate who had purchased the grease. (Id.). When Wasik and the other inmate returned, both Plaintiff and the other inmate were given disciplinary charges. (Id.). Officer Wasik then filled out a confiscation form and instructed Plaintiff to sign it, which Plaintiff refused to do without first reading the form. (Id.). Wasik apparently then became impatient, threatened to call for assistance, and "snatched the paper out of Plaintiff's hand." (Id. at 10). The paper allegedly cut Plaintiff's hand in the process. (Id.). The officer then wrote upon the sheet that Plaintiff had refused to sign the form. (Id.).

---

[3] The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[4]  (D.E. 1, Ex. A).

> Plaintiff alleges that he then told the officers he would file a lawsuit against them. (Id.). Officer Doyle then threatened to "tear Plaintiff's cell up every day" if Plaintiff filed a complaint. (Id.). The officers then seized Plaintiff's canteen receipt without providing a confiscation sheet. (Id.). Plaintiff alleges that he was thereafter "forced to stand outside in the freezing rain without a coat for no reason for an extended period of time (20-30 min[utes])." (Id.).
>
> \*\*\*
>
> In the supplement included in Plaintiff's amended complaint, he asserts that after he filed this action and served it upon the corrections officer Defendants, he suffered several retaliations…. While Plaintiff was being taken to the detention unit, Defendant Wasik apparently said to Plaintiff "You wanna sue me? Have a nice time at South Woods, bye Felisha, bye Felisha, hope you like South Woods." (Id.).
>
> \*\*\*
>
> On June 2, 2015, Plaintiff was transferred to East Jersey State Prison, a maximum rather than medium security prison. (Id.).[5]

Mr. Love's Amended Complaint alleged a retaliatory transfer to East Jersey State Prison and conditions of confinement claims against Defendant Patrick Nogan, the Administrator at East Jersey State Prison ("Mr. Nogan").[6]

B.  Procedural Background

The record is not clear as to when the Northern State Officers received Mr. Love's discovery requests, but their uncertified response to interrogatories and requests for production were provided under cover of letter dated September 29, 2016.[7] Mr. Love objected to the discovery responses by letter dated October 4, 2016.[8] Defense counsel responded "that it was unclear what

---

[5] (D.E. 34, Opinion at 1-4).

[6] (D.E. 19, 20).

[7] (D.E. 61-1, Ex. A).

[8] (*Id.*, Ex. B).

responses [Mr. Love] was objecting to and whether the objections referred to Defendants' response to interrogatory or document demands."[9] Mr. Love responded that he objected to all of the discovery responses.[10] Thereafter, by letter dated December 22, 2016, the Northern State Officers submitted certified "amended" responses to Mr. Love's interrogatories 7, 8, 9, 13, 23, and 24 and certified "amended" responses to his requests for production.[11]

On January 29, 2017, the Court Ordered the Northern State Officers to file their discovery responses on the docket so that the Court could determine their sufficiency.[12] The Northern State Defendants filed their amended responses.[13]

Mr. Love then filed this discovery dispute on May 2, 2017.[14] The Northern State Officers opposed on May 15, 2017.[15]

## II.  **MAGISTRATE JUDGE AUTHORITY**

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[16] This District specifies that magistrate judges may determine all non-dispositive pre-trial

---

[9] (D.E. 66).

[10] (D.E. 66-2, Ex. B, Pl. 11/9/16 Letter).

[11] (D.E. 74-1).

[12] (D.E. 72).

[13] (D.E. 74-1).

[14] (D.E. 103).

[15] (D.E. 107).

[16] 28 U.S.C. § 636(b)(1)(A).

motions which includes discovery motions.[17] Decisions by magistrate judges must be upheld unless "clearly erroneous or contrary to law."[18]

## III.  <u>LEGAL STANDARD</u>

Mr. Love seeks an order compelling further responses to his requests for the production of documents 1, 3, 7, 8, 10 - 17 and interrogatories 1 - 4, 7 - 10, 12 - 16, 18, 23, and 24.

### A.  <u>Burden of Proof</u>

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[19] "Although the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed."[20]

Federal courts employ a burden-shifting analysis to resolve discovery disputes. A party seeking to compel discovery bears the initial "burden of showing that the information sought is relevant to the subject matter of the action."[21] That is because the sole purpose of discovery is to add flesh for trial on the parties' respective claims and defenses in the given action.

---

[17] L. Civ. R. 72.1(a)(1); 37.1.

[18] § 636(b)(1)(A).

[19] Fed. R. Civ. P. 26(b)(1) and(2).

[20] *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

[21] *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[22] District courts and parties opposing discovery must remain mindful that relevance is a broader inquiry at the discovery stage than at the trial stage.[23]

If that burden is met, "the objecting party must specifically show how each discovery request is objectionable."[24] "The responding party shall use common sense and reason, and hyper-technical, quibbling, or evasive objections will be viewed unfavorably."[25] Objections must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is "overly broad and burdensome" or "oppressive" or "vexatious" or "not reasonably calculated to lead to the discovery of admissible evidence."[26] "The burden [is upon] the party resisting discovery to clarify and explain its objections and to provide support therefor."[27]

In addition, "[a]lthough the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed."[28] A party opposing particular discovery requests may seek a protective order. "A court may issue a protective order to regulate the terms, conditions,

---

[22] Fed. R. Evid. 401.

[23] *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

[24] *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D.Kan. 2013).

[25] *Lamon v. Adams*, No. 09-0205, 2014 WL 309424 at *3 (E.D. Cal. Jan. 28, 2014) (citing *Collins v. Wal–Mart Stores, Inc.*, No. 06–2466, 2008 WL 1924935 at *8 (D. Kan. April 30, 2008)).

[26] *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996).

[27] *Id.*,at 1102 (citations omitted).

[28] *Bayer AG*, 173 F.3d at 191 (3d Cir. 1999).

time or place of discovery.[29] The party seeking a protective order bears the burden of showing good cause for the issuance of a protective order by demonstrating a particular need for protection and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not satisfy the Rule 26(c) test.[30] That includes seeking a protective order for documents or information subject to law enforcement privilege, because the objector must demonstrate that any "relevancy is outweighed by the specific harm that would ensue from their disclosure."[31]

Assertion of law enforcement privilege has, at times, been considered grounds for a protective order. The law enforcement privilege is a "qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement."[32] A court will only conduct an analysis of the government's interest in protecting the information at issue after it initially determines that a sufficient affidavit has been provided by the party asserting the privilege.[33]

B. <u>Standard for Responses to Documents Demands</u>

Parties may serve on any other party a demand to produce any designated documents that are in the possession, custody, or control of another party.[34] The responding party must produce "all relevant documents in his possession, custody, or control."[35] Documents are within the

---

[29] Fed. R. Civ. P. 26(c).

[30] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c)); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986) (citing *United States v. Garrett,* 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978).

[31] *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1212 (D.N.J. 1996).

[32] *Id.* at 1209.

[33] *Reid v. Cumberland County*, 34 F. Supp. 3d 396, 403 (D.N.J. 2013)..

[34] *Lamon*, 2014 WL 309424 at *4 (citing Fed. R. Civ. P. 34(a)).

possession, custody, or control of the recipient if "the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand."[35] "Control" is broadly construed, so a party may be required "to produce a document in the possession of a nonparty entity if the party has the legal right to obtain the document."[36] This means a party must produce documents that have been turned over to his agent, such as his insurer or attorney.[38] The requesting party bears the burden of establishing control.[39]

Responses must be made to each item or category of documents requested with a production, an objection, or an answer.[40] A "response must either state that inspection and related activities will be permitted as requested" or "that it will produce copies of [the] documents...."[41] An objection must "state with specificity the grounds for objecting to the request, including the reasons."[42] Also, "[a]n objection must state whether any responsive materials are being withheld

---

[35] *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012) (quoting Fed. R. Civ. P. 34(a)(1)) (internal quotations omitted).

[36] *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995); *Bryant*, 285 F.R.D. at603 (former corrections officer not shown to have access to prisons documents); *Lowe v. D.C.*, 250 F.R.D. 36, 38 (D.D.C. 2008) (former employees of government agency do not have control over documents for their former agency); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) (corporation has control over documents of its subsidiary).

[37] *Bryant*, 285 F.R.D. at 603 (S.D. Cal. 2012).

[38] *See, e.g.*, *Henderson v. Zurn Industries*, 131 F.R.D. 560, 567 (S.D. Ind. 1990).

[39] *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

[40] Fed. R. Civ .P. 34(b)(2)(B).

[41]*Id.*

[42]*Id.*

on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."[43] If instead, a responder answers that there are no responsive documents, the answer must be made "under oath" and detail the search efforts undertaken.[44] Finally, a responding party must also supplement their responses if the information sought is later obtained or amend the responses if they require correction.[45]

    C.  <u>Standard for Responses to Interrogatories</u>

Interrogatories are a discovery device designed "to obtain simple facts…" and "can be a simple mode of obtaining the names and addresses of persons having knowledge of pertinent facts, or of securing information about the existence of documentary evidence[.]"[46] "[A] responding party generally is not required to conduct extensive research to answer an interrogatory, [but] … must make a reasonable effort to respond."[47] The responding party must respond "to the fullest extent possible, stating any objections with specificity.[48] If the responding party does not have the information, he must describe the efforts undertaken to obtain it.[49] Responses must be "in writing

---

[43] Fed. R. Civ. P. 34(b)(2)(C).

[44] *Bryant*, 285 F.R.D. at 603 (quoting 7 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 34.13[2][a], at 34–57 (footnote omitted)).

[45] *Lamon*, 2014 WL 309424 at *4 (citing Fed. R. Civ. P. 26(e)).

[46] *Erie Ins. Property & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D.W.Va. 2010) (quoting Wright, Miller, & Marcus, Federal Practice & Procedure: Civil 3d § 2163).

[47] *Lamon*, 2014 WL 309424 at *4 (citing *L.H. v. Schwartzenegger*, 2007 WL 2781132 at 2 (E.D. Cal. Sep.21, 2007)).

[48] Fed. R. Civ. P. 33(b)(3) and (4).

[49] *Bryant*, 285 F.R.D. at 612; *See Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa.1996).

under oath."[50] Interrogatory "answers" must be signed by the responder and objections must be signed by their attorney.[51]

A responding party must also supplement its responses if the information sought is later obtained or amend the responses if they require correction.[52] "When a party fails to make disclosure of discovery, the opposing party may file a motion to compel."[53]

## IV.    DISCUSSION AND ANALYSIS

Mr. Love complains about the timeliness and sufficiency of the Northern State Officers' responses to requests for production 1, 3, 7, 8, and 10 - 17 and interrogatories 1 - 4, 7 - 10, 12 - 16, 18, 23, and 24. It is unclear when the requests were served, therefore the Court will focus on the substance of the responses. The Officers have responded in perfunctory fashion to many of Mr. Love's requests, stating that documents or information sought is protected as confidential, privileged, private and/or that the Officers do not have possession, custody, or control over prison records. The Court will address the issues separately.

A.    Rule 34, Possession, Custody or Control Over Prison Records

Typically, a party must look to the State of New Jersey, Department of Corrections for the production of its records.[54] A person seeking access to State records has three avenues of approach: request on common law right; Open Public Records Act request; or the discovery devices available

---

[50] Fed. R. Civ. P. 33(b)(3).

[51] Fed. R. Civ. P. 33(b)(5).

[52] *Lamon*, 2014 WL 309424 at *4 (citing F. R. Civ. P. 26(e)).

[53] *Kannaday*, 292 F.R.D. at 644.

[54] *See Lowe*, 250 F.R.D. at 39. Note that agency records may be distinguished from personal records created by an employee of an agency. *Bureau of National Affairs, Inc. v. United States Department of Justice*, 742 F.2d 1484 (D.C. Cir. 1984).

to civil litigants.[55] This case concerns civil discovery of records from a non-party. A party must ordinarily proceed by subpoena in such instances because Rule 34 is not the vehicle to obtain discovery from a non-party.

Here, Mr. Love seeks an order compelling the Northern State Officers to produce prison records and information they claim not to possess, custody, or control. Parties must produce relevant documents in their "possession, custody, or control."[56] The requesting party bears the burden of establishing control.[57] Each of the Northern State Officers is currently employed by the Department of Corrections and each is represented by the Attorney General's Office. Mr. Love complains that the Attorney General's Office obtained and produced his entire prison medical record without his knowledge or authorization to bolster the defenses of the officers in this case.[58] Mr. Love must show that the Northern State Officers, through their attorney or otherwise, have control over the at-issue prison records and information.[59]

Many employees have some responsibility to create records or reports for their employer. If a party possesses copies of their employer's records at home or outside of their workplace, they are obligated to produce responsive records.[60] If instead, the employee merely has access to his employer's records at work, such access alone does not equate with possession, custody, or control

---

[55] *See Beck v. Bluestein*, 194 N.J. Super. 247, 256 (App. Div. 1984) (quotation omitted).

[56] Fed. R. Civ. P. 34(a)(1).

[57] *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

[58] (D.E. 86).

[59] *Bryant*, 285 F.R.D. at 607 (citing *Union of Petroleum & Indus. Workers*, 870 F.2d at 1452.

[60] *See id.*

over the records.[61] The same applies to a government employee who "cannot on his own initiative remove government files and provide them to a third party."[62]

"Control," however, is broadly construed."[63] Some courts have interpreted Rule 34 to require production where the party "has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents."[64] "Factors to be considered on the question of practical ability to obtain documents from a nonparty include 'the existence of cooperative agreements ... between the responding party and the non-party, the extent to which the non-party has [a] stake in the outcome of the litigation, and the non-party's history of cooperating with document requests.'"[65]

Mr. Love relies heavily upon the production of his confidential medical records to establish the voluntary cooperation by the State with the defense. The Attorney General's Office acknowledged obtaining the records, stating that "there was nothing improper about providing Plaintiff's medical records to him, or to the undersigned on behalf of [the] State Defendants."[66] That may be so, but it demonstrates that the Attorney General's Office has the practical ability to obtain documents from the Department of Corrections irrespective of whether the Northern State Officers have any legal right to do the same.

---

[61] *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981).

[62] *Lowe*, 250 F.R.D. at 39.

[63] *Bryant*, 285 F.R.D. at 603.

[64] *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992).

[65] *Benisek v. Lamone*, No. 13-3233, 2017 WL 570312, at *2 (D. Md. Feb. 13, 2017) (quoting *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014)).

[66] (D.E. 85).

Furthermore, the Court takes judicial notice that the Attorney General is obligated to defend State employees against civil claims;[67] and anytime a defense is provided, such as here, "the State shall provide indemnification for the State Employee."[68] Therefore, the Court finds that State has a significant stake in the outcome of this suit and that Mr. Love has met his burden to prove that the Northern State Officers have "control", albeit through their attorney, over the records and information at-issue. Other courts have reached the same conclusion in cases against corrections officers and other prison officials.[69]

B. Privacy and Law Enforcement Privilege

Federal courts recognize a right of privacy that can be raised in response to discovery requests,[70] and have ordered the production of documents by a prison to inmate plaintiffs with confidential information redacted and accompanied by a privilege log.[71] The party objecting to production bears the burden to show that the request is objectionable or to seek a protective order. Resolution of such an objection or request for protective order requires balancing the need for the

---

[67] N.J.S.A. 59:10A-1.

[68] N.J.S.A. 59:10-1.

[69] *See e.g., Pulliam v. Lozano*, No. 07-0964, 2011 WL 335866, at *1 (E.D. Cal. Jan. 31, 2011); *Mitchell v. Adams*, 2009 U.S. Dist. LEXIS 24289, *24–25, 2009 WL 674348, *9 (E.D. Cal. Mar. 6, 2009) (even though defendant warden was sued in his individual capacity, he had constructive control over requested documents because he had authority to obtain the requested documents from third party CDCR). *But see Bryant*, 285 F.R.D. at 607 (former corrections officer did not have control over documents, but argument would be stronger against current officers).

[70] *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992); *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548 (E.D.Cal.1990).

[71] *See Dixie v. Virga*, No. 12-2626, 2015 WL 412298, at *14 (E.D. Cal. Jan. 30, 2015).

information against the privacy right asserted.[72] The Northern State Officers have not satisfied their burden.

Similarly, the law is clear that a party invoking law enforcement privilege must demonstrate with regard to documents or information that any "relevancy is outweighed by the specific harm that would ensue from their disclosure."[73] A court will only conduct an analysis of the government's interest in protecting the information after it determines that a sufficient affidavit has been provided by the party asserting the privilege.[74] "Failure to comply with these procedural requirements may lead to denial of the privilege."[75]

The Court finds that the Northern State Officers failed to meet their initial burden to invoke privilege or show that the documents or information requested is objectionable. Rather than produce an affidavit from the agency head, as required by *O'Neill*, or a privilege log, the Officers have merely and vaguely asserted privilege.

It is against this backdrop that the Court will review the respective discovery disputes.

C.  <u>The Northern State Officers' Responses to Document Demands</u>

Request for Production 1. "Any and all grievances, complaints or other documents received by prison staff Defendant Johnson or his agents at Northern State Prison concerning defendants

---

[72] *Pansy*, 23 F.3d at 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c)); *Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441 (11th Cir. 1984).

[73] *Torres*, 936 F. Supp. at1212.

[74] *Reid*, 34 F. Supp. 3d at 403 (D.N.J. 2013).

[75] *See Groark v. Timek*, 989 F. Supp. 2d 378, 390 (D.N.J. 2013) (privilege summarily denied).

Wasik, Marsh, Doyle and Morales."[76] The Northern State Officers provided a response and amended response.[77] Their counsel further responded as follows:

> #1: This demand is improper because it is addressed to Defendant Johnson, who is not represented by this office at this time. Notwithstanding, Complaints and/or grievances by other inmates against the Defendants are confidential and irrelevant. Moreover, investigations, complaints, and grievances pursued by the New Jersey Department of Corrections ("NJDOC") are stored according to the institution the investigation occurred at, followed by inmate name and date, and not subject matter. Thus, a search for any and all investigations, complaints, or grievances against these individuals would require looking at all investigations conducted and as such, is overly burdensome. Lastly, the Defendants are not in possession of any such complaints or grievances.[78]

The relevance objection is overruled. Relevance is a broader inquiry at the discovery stage than at the trial stage.[79] Though the information may not be admissible at trial, it is discoverable despite the absence of a *Monell* claim. Also, the final amended answer is unverified and fails to address the efforts made, if any, to produce responsive documents. Mr. Love has carried his burden to establish that the Officers have access, through their attorney, to the prison's records. Mr. Love's informal motion to compel a further response to this request is **GRANTED** subject to any subsequent protective order.[80]

---

[76] (D.E. 61-1 at 13; D.E. 74-1 at 19; D.E. 103-1 at 19).

[77] (D.E.61-1 at 3; D.E. 74-1 at 19).

[78] (D.E. 80 at 4; D.E. 107 at 7-8).

[79] *Nestle Foods Corp.*, 135 F.R.D. at 104.

[80] *Hardney v. Phillips*, No. 13-2371, 2015 WL 2082427, at *2 (E.D. Cal. May 4, 2015) (court ordered production subject to an anticipated motion for protective order).

Request for Production 3. "Any and all policies, directives or instructions concerning the transferring of prisoners from prison to prison."[81] The Northern State Officers provided a response and amended response.[82] Their counsel further responded as follows:

> #3: This demand is vague and ambiguous as to what Plaintiff means by "transferring prisoners from one prison to prison." There are various types of transfers, both voluntary and involuntary. The Defendants may be able to provide Plaintiff with a more specific response should he present a more specific demand. Similarly, Defendants are not in possession of such "policies, directives or instructions." Despite their objections, the Defendants referred Plaintiff to the relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:7-7.1 to 7-7 entitled "Inter-Institutional Transfer." Similarly, Plaintiff may also refer to pages: 9, 35, 37, 44, 51, 56, 59, and 62 of the 2014 NSP Inmate Handbook and pages: 8, 10, 11, 27, 36, 71, and 77 of the 2014/2015 EJSP Inmate Handbook, which discuss various provisions related to inmate transfers. Lastly, Plaintiff may try to subpoena the information from non-party NJDOC pursuant to F.R.C.P. 45.[83]

The request was clear enough for the Northern State Officers to produce relevant references, and therefore the objection is overruled. Curiously, the response directs Mr. Love to relevant documentation but states that they "are not in possession of such 'policies, directives or instructions.'" This answer is unverified and fails to set forth the efforts made, if any, to produce responsive documents. The informal motion to compel a further response to this request is **GRANTED**.

Request for Production 7. "Any and all policies, directives or instructions concerning disciplining prisoners who violate the rules of the institution."[84] The Northern State Officers

---

[81] (D.E. 61-1 at 13; D.E. 74-1 at 19; D.E. 103-1 at 19).

[82] (D.E. 61-1 at 3; D.E. 74-1 at 19).

[83] (D.E. 80 at 4-5; D.E. 107 at 8).

[84] (D.E. 61-1 at 14; D.E. 74-1 at 19; D.E. 103-1 at 20).

provided a response.[85] Their counsel further responded as follows: "#7: See response to interrogatory #12, supra."[86] The response to interrogatory 12 stated:

> #12: This interrogatory is vague and ambiguous as phrased. The Defendants are unable to answer the interrogatory as phrased because there are many different violations an inmate might get into trouble for the process for dealing with such violations and their corresponding punishment vary. It also assumes that there are policies for punishing prisoners "who don't" violate the rules. Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory. Notwithstanding, Plaintiff can refer himself to the relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:4-1.1-12.3 to entitled "Inmate Discipline." Similarly, Plaintiff may also refer to pages: 52-62 of the NSP Inmate Handbook and pages: 80-91 of the EJSP Inmate Handbook, which discuss various provisions related to "detention" and "close custody units."[87]

The request was clear enough for the Northern State Officers to produce relevant references, and therefore the objection is overruled. Nonetheless, the response cites to relevant codes and documentation. The informal motion to compel a further response to this request is **DENIED**.

Request for Production 8. "Any and all policies, procedures, directives or instructions to staff concerning placing a prisoner in the detention unit at [Northern State Prison]."[88] The Northern State Officers provided a response and amended response.[89] Their counsel further responded as follows:

---

[85] (D.E. 61-1 at 14).

[86] (D.E. 107 at 8).

[87] (D.E. 107 at 5-6).

[88] (D.E. 61-1 at 14; D.E. 74-1 at 20; D.E. 103-1 at 20).

[89] (D.E. 61-1 at 14; D.E. 74-1 at 20).

#8: This demand is vague and ambiguous as it is not clear what Plaintiff means by "detention." Plaintiff presumably is referring to "Close Custody Units," of which there are many, including but not limited to, pre-hearing disciplinary housing, protective custody, observation, hospital, management control unit, administrative segregation, protective custody and temporary close custody. Notwithstanding these objections, the Defendants are not in possession of any such "policies, directives, or instructions." Nonetheless, the Defendants referred Plaintiff to the relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:5-1.1-7.1 entitled "Close Custody Units." Similarly, Plaintiff may also refer to pages: 17, 23, 24, 25, 35, 45, 52, 56, 61, and 62 of the NSP Inmate Handbook and pages: 50, 56, 62, and 63 of the EJSP Inmate Handbook, which discuss various provisions related to "detention" and "close custody units."[90]

The final response directs Mr. Love to relevant documentation but then provides an unverified answer that "the Defendants are not in possession of any such 'policies, directives, or instructions'"[91] without any description of "efforts … made to locate responsive documents."[92] Mr. Love's informal motion to compel a further response to this request is **GRANTED**.

Finally, Mr. Love states that the remaining requests for production # 10 through 18 pertain to East Jersey State Prison.[93] The Northern State Officers responded.[94] Defense counsel amended and/or supplemented as follows:

# 10, 11, 12, 13, 14, 15, 16, 17 each pertain to East Jersey State Prison and were addressed by Defendant Nogan in his responses that were provided to Plaintiff by cover letter dated April 18, 2017.[95]

---

[90] (D.E. 107 at 8).

[91] (D.E. 107 at 8).

[92] *Bryant*, 285 F.R.D. at 603 (quoting 7 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 34.13[2][a], at 34–57 (footnote omitted)).

[93] (D.E. 61-1 at 15–16; D.E. 103-1 at 20).

[94] (D.E. 61-1 at 15–16).

[95] (D.E. 107 at 9).

Mr. Love complains that the requested documents are in the possession of Defendant Nogan, the Administrator of East Jersey State Prison. Defense counsel asserts that Mr. Nogan addressed these issues "in his responses that were provided to Plaintiff by cover letter dated April 18, 2017."[96] To the extent that Mr. Love wishes to file an informal motion against Mr. Nogan, he should do so in compliance with this Court's scheduling order. Mr. Love's motion to compel a further response from the Northern State Officers regarding documents pertaining to East Jersey State Prison is **DENIED**.

D. The Northern State Officers' Interrogatory Responses

Interrogatory 1. "Identify the last known address for defendants Marsh and Johnson."[97] The Northern State Officers responded.[98] Their counsel further responded as follows:

> #1: The Defendants are not aware of the last known addresses of Defendants Marsh and Johnson nor are they obligated to provide this information. Moreover, even if the Defendants did possess this information, personal addresses of current or former Corrections Officers or Administrative staff would not be provided to an inmate for security reasons.[99]

The Northern State Officers do not dispute the relevance of the information requested and thus bear the burden of showing that the request is objectionable. Instead, they simply assert they are not obligated to provide this information without citation to any federal authority or ruling from this Court. State privilege law does not govern discovery issues in federal § 1983 cases. The Court's April 2017 Order made clear the Northern State Officers would have to comply with

---

[96] *Id.*

[97] (D.E. 61-1 at 4; D.E. 103-1 at 9).

[98] (D.E. 61-1 at 4).

[99] (D.E. 107 at 3).

*Torres* if they intended to assert privilege,[100] but they have not. As stated above, the Court finds that Mr. Love has met his burden to prove access. The informal motion to compel a further response to this request is **GRANTED**. The addresses shall be produced to the Court under seal for service of the Amended Complaint by the United States Marshals Service.

Interrogatory 2. "State the names and addresses of each and every person who has knowledge about any claims or defenses alleged in this action; and the substance of such knowledge."[101] The Northern State Officers responded as follows:

> #2: Answering Defendants state that parties to this suit, their agents and employees, all persons named in these interrogatories, all persons named in depositions and other discovery of all parties herein; all persons who examined and/or treated plaintiff; all persons who investigated the incident prior to and upon the institution of the suit, custodians of all records and all other persons whom a continuing discovery may reveal.[102]

Defense counsel amended and/or supplemented as follows:

> #2: The Defendants' response to this interrogatory is as comprehensive as possible given the vagueness of the interrogatory question. The knowledge of the parties and individuals whose names appear on documentation produced during the course of discovery speaks for itself. If the Defendants become aware of any additional persons not identified in these responses they shall amend their responses to include same.[103]

This final amended response is unverified, evasive and unresponsive. Mr. Love's motion to compel a further response is **GRANTED**.

---

[100] (*See* D.E. 94).

[101] (D.E. 61-1 at 4; D.E. 103-1 at 9).

[102] (D.E. 61-1 at 4).

[103] (D.E. 107 at 3-4).

Interrogatory 3. "State the reason(s) why defendant Marsh is no longer employed by the D.O.C. attaching responsive documents to your answer.[104]  The Northern State Officers responded as follows:

> #3: Defendants have no knowledge as to why Defendant Marsh is no longer employed by the DOC.[105]

The Northern State Officers do not dispute the relevance of the information requested and their answer is unverified. The informal motion to compel a further response is **GRANTED**.

Interrogatory 4. "State whether defendants Wasik, Marsh, Doyle, Morales or Johnson have ever received any complaints or grievances against them. Attach any memoranda, investigative files, or other documents created in response to such complaints."[106] The Northern State Officers responded[107] before amending and/or supplementing as follows:

> #4: Plaintiff's request for inmate complaints against the Defendants is irrelevant because the supervisory claims within his Complaint have either been dismissed or only remain as to Defendants that have yet to be served. Thus, such complaints, assuming they exist, would not be relevant to any of his remaining claims. Moreover, the State Defendants are not in possession of any such Complaints. Investigations, complaints, and grievances pursued by the New Jersey Department of Corrections ("NJDOC") are stored according to the institution the investigation occurred at, followed by inmate name and date, and not subject matter. Thus, a search for any and all investigations, complaints, or grievances against these individuals would require looking at all investigations conducted and as such, is overly burdensome. (Dkt. #102). Similarly, any Special Investigations Division investigation reports would not be provided

---

[104] (D.E. 61-1 at 5; D.E. 103-1 at 10).

[105] (D.E. 61-1 at 5; D.E. 107 at 4).

[106] (D.E. 61-1 at 5; D.E. 103-1 at 10).

[107] (D.E. 61-1 at 5).

to a Corrections Officer who was the subject of an investigation. Id.;
See also Dkt. #80.[108]

The Court's reasoning and ruling on the response to Request for Production 1 applies here. The informal motion to compel a further response to this request is **GRANTED**.

Interrogatory 7. "Identify the policy and procedures in effect during the relevant time period for transferring prisoners from one prison to another. Attach those policies and procedures."[109] The Northern State Officers responded.[110] Their counsel further responded as follows:

> #7: The Defendants object that this interrogatory is vague and ambiguous as to what time frame Plaintiff means when he states the "relevant time period" and what he means when he states "transferring prisoners from one prison to another." The dates forming the basis of Plaintiff's Complaint begin on November 1, 2014 and continue for an unknown period of time at East Jersey State Prison. Moreover, there are various types of prison transfers, both voluntary and involuntary. The Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory. Despite their objections, the Defendants provided Plaintiff with a relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:7-7.1 to 7-7 entitled "Inter-Institutional Transfer." Similarly, Plaintiff may also refer to pages: 9, 35, 37, 44, 51, 56, 59, and 62 of the 2014 Northern State Prison ("NSP Inmate Handbook") Institutional Inmate Handbook and pages: 8, 10, 11, 27, 36, 71, and 77 of the 2014/2015 East Jersey State Prison ("EJSP Inmate Handbook") Inmate Handbook, which discuss various provisions related to inmate transfers.[111]

---

[108] (D.E. 107 at 4).

[109] (D.E. 61-1 at 5-6; D.E. 74-1 at 4; 103-1 at 12).

[110] (D.E. 61-1 at 5-6; D.E. 74-1 at 4, 9, 14).

[111] (D.E. 107 at 4-5).

The Northern State Officers' objection and production were signed by counsel and cites to relevant documentation.[112] The informal motion to compel a further response to this request is **DENIED**.

Interrogatory 8. "State the procedure for taking a prisoner from general population and placing him in detention. Attach responsive documents."[113] The Northern State Officers responded and amended their response.[114] Defense counsel further responded as follows:

> #8: The Defendants object that this interrogatory is vague and ambiguous as to what Plaintiff means as it is not clear what Plaintiff means by "detention." Plaintiff presumably is referring to "Close Custody Units," of which there are many, including but not limited to, pre-hearing disciplinary housing, protective custody, observation, hospital, management control unit, administrative segregation, protective custody and temporary close custody. The Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory. Despite their objections, the Defendants provided Plaintiff with the relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:5-1.1-7.1 entitled "Close Custody Units." Similarly, Plaintiff may also refer to pages: 17, 23, 24, 25, 35, 45, 52, 56, 61, and 62 of the NSP Inmate Handbook and pages: 50, 56, 62, and 63 of the EJSP Inmate Handbook, which discuss various provisions related to "detention" and "close custody units."[115]

The Northern State Officers' objection and production were signed by counsel and directs Mr. Love to relevant documentation. The informal motion to compel a further response to this request is **DENIED**.

---

[112] Fed. R. Civ. P. 33(d).

[113] (D.E. 61-1 at 6; D.E. 74-1 at 5; D.E. 103-1 at 13).

[114] (D.E. 61-1 at 6; D.E. 74-1 at 5, 9, 14).

[115] *Compare with* D.E. 74-1 at 5 (Doyle's response) and D.E. 74-1 at 9 (Morales' response).

Interrogatory 9. "State the process in which a prisoner would go through in being placed in detention. Attach responsive documents."[116] The Northern State Officers responded as follows:

> #9: Answering Defendants object to this interrogatory on the grounds that it seeks information which is deemed privileged and/or confidential because disclosure of same would affect the security and operation of the New Jersey Department of Corrections and Northern State Prison.[117]

Their amendment and supplement stated: "Answer: See response to #8."[118]

The Northern State Officers' response was signed by counsel and cites to relevant documentation.

The informal motion to compel a further response to this request is **DENIED**.

Interrogatory 10. "For each defendant, state their duties at N.S.P. and how long they've been employed by the D.O.C. Attach responsive documents."[119] The Northern State Officers responded as follows:

> #10: Answering Defendants are employed as Corrections Officers. The following are the job duties of a New Jersey Department of Corrections officer:
>
> a. To provide public safety and security custody and management of these individuals with in the Criminal Justice System;
>
> b. To ensure the safety and welfare of the staff and inmate population;
>
> c. To assist in the rehabilitative efforts for those incarcerated individuals returning to the community;

---

[116] (D.E. 61-1 at 6; D.E. 74-1 at 5; D.E. 103-1 at 13).

[117] (D.E. 61-1 at 6).

[118] (D.E. 74-1 at 5).

[119] (D.E. 61-1 at 6; D.E. 103-1 at 13).

d. To promote public support for the operation and objectives of the Department of Corrections.[120]

Their amendment and supplement stated:

> #10: The Defendants provided the duties of a DOC Corrections Officer. The Defendants can provide Plaintiff with the length of their employment at DOC under separate cover. Moreover, it is unclear what Plaintiff means by "attach responsive documents." The Defendants' job duties and their length of employment is within their knowledge and not derived from documents.[121]

The Northern State Officers' answer is unverified and for that reason the informal motion to compel a further response is **GRANTED**.

Interrogatory 12. "State the policies and procedures for punishing prisoners who violate the rules and those who don't violate the rules. Attach responsive documents."[122] The Northern State Officers responded.[123] Their amendment stated:

> #12: This interrogatory is vague and ambiguous as phrased. The Defendants are unable to answer the interrogatory as phrased because there are many different violations an inmate might get into trouble for the process for dealing with such violations and their corresponding punishment vary. It also assumes that there are policies for punishing prisoners "who don't" violate the rules. Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory. Notwithstanding, Plaintiff can refer himself to the relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:4-1.1-12.3 to entitled "Inmate Discipline." Similarly, Plaintiff may also refer to pages: 52-62 of the NSP Inmate Handbook and pages: 80-91 of the EJSP Inmate Handbook, which discuss various provisions related to "detention" and "close custody units."[124]

---

[120] (D.E. 61-1 at 6).

[121] (D.E. 107 at 5).

[122] (D.E. 61-1 at 7; D.E. 103-1 at 14).

[123] (D.E. 61-1 at 7).

[124] (D.E. 107 at 5-6).

The Court sustains the objection. The objection and citation to relevant documentation is signed by counsel. The motion to compel a further response is **DENIED**.

Interrogatory 13. "State the policies and procedures for and against punishing prisoners who engage in constitutionally protected conduct. Attach responsive documents."[125] The Northern State Officers responded and amended their response.[126] Defense counsel further responded as follows:

> #13: This interrogatory is vague and ambiguous and calls for a legal conclusion as to what constitutes "Constitutionally protected conduct." Moreover, it is argumentative in that it assumes that there are DOC policies promulgating punishment for prisoners who engage in constitutionally protected conduct. Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory.[127]

The Court sustains the objection. The motion to compel a further response is **DENIED**.

Interrogatory 14. "State the basis for each and every defense asserted in your answer. Attach responsive documents."[128] The Northern State Officers responded.[129] Defense counsel further responded as follows:

> #14: The purposes of pleading affirmative Defenses is to put the plaintiff on notice that they apply. The Defendants also objected as the interrogatory sought information prepared or developed in the anticipation of litigation or subsequent to the filing of the lawsuit by or through the direction of legal counsel on the grounds that such material is protected from disclosure as attorney-work product. The

---

[125] (D.E. 61-1 at 7; D.E. 74-1 at 5; D.E. 103-1 at 15).

[126] (D.E. 61-1 at 7; D.E. 74-1 at 5).

[127] (D.E. 107 at 6).

[128] (D.E. 61-1 at 7; D.E. 103-1 at 15).

[129] (D.E. 61-1 at 7).

Defendants will continue to amend their discovery responses as necessary.[130]

This request violates the restriction on subparts for asking a compound question. Rule 33(a)(1) provides that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."[131] The motion to compel a further response is **DENIED**.

Interrogatory 15. "Identify the number of cameras that are on housing unit D-1-E at the time of plaintiff's strip search."[132] The Northern State Officers responded.[133] Their counsel further responded as follows:

> #15: Inmates would not be provided with the number of cameras located within a detention unit, or any unit, because that would significantly affect the security and operation of the New Jersey Department of Corrections and Northern State Prison.[134]

The Northern State Officers do not dispute the relevance of the information requested and therefore must specifically show how the request is objectionable.[135] "The burden [is upon] the party resisting discovery to clarify and explain its objections and to provide support therefor."[136]

---

[130] (D.E. 107 at 6).

[131] Fed. R. Civ. P. 33(a)(1).

[132] (D.E. 61-1 at 7; D.E. 103-1 at 16).

[133] (D.E. 61-1 at 7).

[134] (D.E. 107 at 6).

[135] *Kannaday*, 292 F.R.D. at 644. *See Boomer v. Lewis*, 541 F. App'x 186, 190 (3d Cir. 2013) (inmate provided video surveillance of his encounter with officer); *Bryant*, 285 F.R.D. at 609 (prisoner surveillance recordings found relevant to prisoner discrimination suit).

[136] *Harding*, 914 F. Supp. at 1102 (citations omitted).

The informal motion to compel a further response to this request is **GRANTED**. Any video of the incident in the prison canteen or the subsequent events included in the facts set forth above shall be made available to Mr. Love.

Interrogatory 16. "Identify the names, SBI numbers and state numbers of each and every prisoner housed on D-1-E at the time of plaintiff's strip search. Attach responsive documents."[137] The Northern State Officers responded.[138] Defense counsel further responded as follows:

> #16: Answering Defendants are unaware of the SBI numbers and/or identities of each and every prisoner housed on D-1-E at the time of Plaintiff's claimed strip search. Moreover, even if the Defendants possessed such information, they would not be able to identify such inmates for security and privacy reasons. Detention units do not only house inmates subject to pre-hearing detention, but it also houses inmates that are there for extremely sensitive reasons, for example, protective custody and suicide watch.[139]

The Northern State Officers do not dispute the relevance of the information requested and therefore must specifically show how the request is objectionable.[140] The informal motion to compel a further response to this request is **GRANTED**.

---

[137] (D.E. 61-1 at 8; D.E. 103-1 at 17).

[138] (D.E. 61-1 at 8).

[139] (D.E. 107 at 6).

[140] *Kannaday*, 292 F.R.D. at 644. *See Boomer*, 541 F. App'x at 190 (inmate provided video surveillance of his encounter with officer); *Bryant*, 285 F.R.D. at 609 (prisoner surveillance recordings found relevant to prisoner discrimination suit).

Interrogatory 18. "Identify the vantage point of any and all cameras on housing unit D-1-E. Attach responsive documents."[141] The Northern State Officers responded.[142] Their amended response stated:

> #18: Inmates would not be provided with the vantage points or number of cameras located within a detention unit, or any unit, because that would significantly affect the security and operation of the New Jersey Department of Corrections and Northern State Prison.[143]

The Court's ruling as to interrogatory 16 applies to 18. The informal motion to compel a further response to this request is **GRANTED**.

Interrogatory 23. "State whether N.J. D.O.C. employees receive any training concerning prisoner's rights and how not to violate them. Attach responsive documents to your answer."[144] The Northern State Officers responded and amended their response.[145] Defense counsel further responded as follows:

> #23: This interrogatory, as phrased, is argumentative. Moreover, it is vague and ambiguous as it is unclear what Plaintiff means by "prisoner's rights" and "how not to violate them." Defendants received various trainings at the NJDOC Academy and it is unclear what specific training Plaintiff wants to know that the Defendants received. The Defendants may be able to provide Plaintiff with a more specific response should he present a more specific, nonargumentative interrogatory. Notwithstanding these objections, Defendants referred Plaintiff to a relevant portion of the New Jersey Administrative Code, N.J.A.C. 10A:4-1.3 entitled "Notification of inmates of their rights and responsibilities." Plaintiff may also refer

---

[141] (D.E. 61-1 at 8; D.E. 103-1 at 17).

[142] (D.E. 61-1 at 8).

[143] (D.E. 107 at 7).

[144] (D.E. 61-1 at 9; D.E. 74-1 at 5; D.E. 103-1 at 18).

[145] (D.E. 61-1 at 9; D.E. 74-1 at 5-6, 10-11, 15-16).

to pages: 7, 8, 22, 23, 24, 61, and 65 of the NSP Inmate Handbook and pages: 1, 23, 24, 25, 26, 27, 47, 48, and 49 of the EJSP Inmate Handbook, which discuss numerous provisions related to the rights and privileges of inmates.[146]

The Court sustains the objection. The final response nonetheless directs Mr. Love to relevant documentation. The motion to compel a further response is **DENIED**.

Interrogatory 24. "State the procedure for investigating prisoner's grievances and/or complaints against prison staff. Attach responsive documents."[147] The Northern State Officers responded.[148] Their counsel further responded as follows:

#24: This interrogatory is overly broad as there are various types of grievances and/or complaints an inmate may raise with prison staff and the handling of such may vary on the nature of the complaint and/or grievance. The Defendants may be able to provide Plaintiff with a more specific response should he present a more specific interrogatory. Notwithstanding these objections, Defendants referred Plaintiff to pages: 2, 6, 25, 26, and 65 of the NSP Inmate Handbook and pages: 4, 10, 49, 50, and 51 of the EJSP Inmate Handbook, which discuss various provisions related to the Inmate Grievance Procedure.[149]

The Court sustains the objection. The final response nonetheless cites to relevant documentation. The motion to compel a further response is **DENIED**.

An appropriate Order follows:

## ORDER

**IT IS** on this Friday, August 11, 2017,

---

[146] (D.E. 107 at 7).

[147] (D.E. 74-1 at 6; D.E. 103-1 at 18).

[148] (D.E. 74-1 at 6, 11).

[149] (D.E. 80; D.E. 107 at 7).

1. **ORDERED**, that Plaintiff Love's informal motion to compel is **GRANTED in part and DENIED in part;** and it is further

2. **ORDERED**, that Defendants, Robert Wasik, Gerard Doyle, and Ruben Morales shall supplement and/or amend their discovery responses within 30 days consistent with this Opinion. If their response to any document request contains an answer, it must be made under oath and signed by the respective defendant(s). All answers to interrogatories must similarly be made under oath and signed by the respective defendant(s) with objections signed by counsel; and it is further

3. **ORDERED**, that Defendants' counsel shall redact non-party personal identifying information including photographs, social security numbers, driver's license numbers, dates of birth, home addresses, email addresses, unlisted telephone numbers, and the names of alleged crime victims or complainants other than Plaintiff Love; and it is further

4. **ORDERED**, that any application by Defendants for a protective order shall comply with *O'Neil*, *Pansy*, and *Torres* and shall be made within thirty (30) days from the date of this Order; and it is further

5. **ORDERED**, that the Clerk of the Court shall provide a copy of this Order to the Plaintiff.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

8/11/2017 4:23:46 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties

File

Mr. Lemont Love
670637/331321C
East Jersey State Prison
Lockbag R
Rahway, NJ 07065